IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MILTON AL STEWART, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:20-cv-1087-RJC<br>Judge Robert J. Colville |
| v. | ) ) ) | |
| LOVING KINDNESS HEALTHCARE SYSTEMS, LLC and SCOTT TAYLOR, | ) ) ) | |
| Defendants. | ) | |

**<u>OPINION ON DEFAULT JUDGMENT</u>**

Presently before the Court is a Motion for Default Judgment (ECF No. 21) filed on behalf of Milton Al Stewart, Secretary of Labor, United States Department of Labor ("Secretary" or "Plaintiff"). The Secretary moves for default judgment against Defendants Loving Kindness Healthcare Systems, LLC ("LKHS" or "Employer") and Scott Taylor ("Taylor") (collectively referred to as "Defendants"). Specifically, the Secretary contends Defendants violated (1) the Fair Labor Standards Act ("the FLSA or "the Act")'s provision mandating time-and-one-half compensation for overtime hours worked, 29 U.S.C. § 207 (2006) ("§ 7"); and (2) the FLSA requirement that employers keep accurate records of their employees' hours and compensation, 29 U.S.C. § 211(c) (2006) ("§11(c)"). The Secretary argues that these violations were willful and that this court should award back wages, liquidated damages, and injunctive relief. Defendants have failed to appear.

For the reasons stated herein, the motion is granted.

## I. Background[1]

LKHS is a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with a registered office at 155 North Craig Street, Suite 160, Pittsburgh, PA 15213 within the jurisdiction of this Court. (ECF No. 1 ¶ 2). Taylor is an owner of LKHS at the same address.[2] (ECF No. 1 ¶ 3; Declaration of Michael Sheuy in Supp. of Pl.'s M. for Def. J (ECF No. 21-3) (hereinafter, "Shuey Decl") ¶ 3).

During the relevant period, Defendant LKHS was an enterprise within the meaning of section 3(r) of the Act, 29 U.S.C. § 203(r), in that it was, through unified operation or common control, engaged in the performance of related activities for a common business purpose. (ECF No. 1 ¶ 4). Defendant LKHS employed persons in domestic service, which affects commerce per section 2(a)(5) of the Act, 29 U.S.C. § 202(a)(5). (ECF No. 1 ¶ 4). Defendant LKHS's employees assist disabled and elderly clients with activities of daily living such as shopping, cooking, and housekeeping, which involves handling or otherwise working on goods or materials that have been moved in or produced for commerce. (ECF No. 1 ¶ 4). LKHS has had an annual gross volume of sales made or business done in an amount not less than $500,000.00. (ECF No. 1 ¶ 5). Therefore, the employees of Defendant are employed in an enterprise engaged in commerce or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce within the meaning of section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A), of the Act.

Defendant Taylor meets the definition of an employer under section 3(d) of the Act, 29 U.S.C. § 203(d). The FLSA provides in pertinent part, that an employer "includes any person

---

[1] Generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).
[2] Defendants were served at this address, as reflected in their executed waivers of service. (ECF No. 14-1).

acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d) ("§ 3"). Courts have interpreted § 3's terms broadly in order to better effectuate the statute's sweeping remedial objectives. *See, e.g., Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991). Defendant Taylor has been actively involved in the day-to-day operations of LKHS, and he has directed employment practices and directly or indirectly acted in the interest of LKHS in relation to its employees at all relevant times, including hiring and firing employees, setting employees' conditions of employment, setting rates and methods of compensation, and supervising employees day-to-day. (ECF No. 1 ¶3; Shuey Decl. ¶ 3).

On August 14, 2020, Defendants were served with the complaint filed in this matter in accordance with Fed. R. Civ. P. 4(e), and they returned executed waivers of service, which the Secretary filed on September 18, 2020. (ECF Nos. 14, 14-1). An answer to the complaint was due on October 15, 2020. Fed. R. Civ. P. 12(a). Plaintiff stipulated to an additional thirty days for Defendants to file an answer. (ECF No. 15). No answer to the complaint was ever filed. On November 20, 2020, the Secretary filed a request to enter default against the Defendants. (ECF No. 6). The Clerk entered default against the Defendants on November 23, 2020. (ECF No. 18).

On December 18, 2020, Plaintiff filed a Motion for Default Judgment (ECF No. 21), a Memorandum of Law in support thereof (ECF No. 24), and attached to the motion several declarations and other exhibits (ECF Nos. 21-3, 21-4, 21-5, 21-6), all of which the court has reviewed. The motion also included a certificate of service to Defendants (ECF No. 21-7). On that same date, the Court scheduled hearing, and a copy of that order was mailed to Defendants at their last known address of record (ECF No. 22). On December 18, 2020 Plaintiff's counsel filed a Notice of Service that he also served the order scheduling this hearing to Defendants via email (ECF No. 23). Notice of the hearing was also placed on the Court's official calendar.

A hearing was held on February 3, 2021, via video-conference. (ECF No. 26). No representative from either Defendant appeared at the hearing. Michael A. Shuey, Investigator, Wage and Hour Division ("WHD") of United States Department of Labor testified. His testimony reiterated the facts stated in his affidavit, cited *supra,* as well as explained the Secretary's calculations of damages. The following exhibits were admitted into evidence:

| | |
|---|---|
| A | Defts' Weekly timekeeping & pay rate records (10/1/17 – 10/14/17) |
| B | Defts' Daily timekeeping & pay rate records (9/29/19 – 11/19/20) |
| C | Transactions by Payroll Item – May 25, 2019- October 12, 2019 |
| D | Back wage computations – 10/07/2017 to 09/28/2019 |
| E | Back wage computations – 11/26/2016 to 09/30/2017 |
| F | Back wage computations – 10/05/2019 to 10/24/2020 |
| G | Declaration of Michael A. Shuey, Investigator, Wage and Hour Division |

(ECF Nos. 26-1 through 26-8).

Mr. Shuey explained that he participated in the investigation of LKHS, to determine if Defendants were in compliance with the FLSA. The investigation period was from October 7, 2017 through September 28, 2019. In the course of the investigation, interviews of Taylor and employees were conducted. Those interviews revealed the fact that from November 20, 2016 through October 28, 2020 ("the relevant period") Defendants did not pay their employees the required overtime premium when the employees worked more than forty hours in a week. Defendants paid their employees their straight-time regular rates for all hours worked, including all overtime hours worked over 40 in the workweeks covered by the investigation period. Defendants' employees regularly worked over 40 hours per week, with several working 100 hours

per week or more in some workweeks. Defendant Taylor admitted he directed employment practices and directly acted in the interest of LKHS in relation to its employees, including hiring, firing, supervising, setting pay rates, and setting the conditions of employment for employees. He also admitted to determining which employees were paid overtime and which were not for certain portions being investigated.

In fact, according to Mr. Shuey, Taylor admitted that Defendants continue to pay a number of their employees at their regular rates for hours worked in excess of 40 hours per week. Defendants' timekeeping records show the weekly overtime hours worked per affected employee. Defendants paid caregivers wages between $8.00 and $24.00 per hour. During the relevant period, the affected employees worked at least one hour in excess of forty per workweek, and many employees worked in excess of approximately ten hours of overtime per workweek on average. Defendants only paid these employees their straight-time hourly rates for all hours worked, and did not pay the required one and one-half premium rate for overtime hours worked.

## II. Discussion

### A. Applicable Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides for entry of default judgment against a defendant who has not appeared and who is neither a minor nor an incompetent person. Fed. R. Civ. P. 55(b). When a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to enter default judgment under Rule 55(b)(2) rests in the discretion of the district court. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987). In undertaking this evaluation, the Court must consider: (1) whether the plaintiff will be prejudiced if the default is denied; (2) whether the defendant has a meritorious defense; and (3) whether the defaulting defendant's conduct is excusable or culpable. *See, e.g., Chamberlain v. Giampapa*, 210

F.3d 154, 164 (3d Cir.2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). When a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided.

As noted *supra*, generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). However, the Court is not required to accept Plaintiffs' conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against Defendants. *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58–59, 63 (3d ed. 1998)); *accord Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364; *Comcast Cable Commc'ns v. Bowers*, No. 06-1664, 2007 WL 1557510, at *2 (D. N.J. May 25, 2007).

**B. The FLSA's Overtime Provisions and Recordkeeping Provisions**

Section 7 of the FLSA provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce ... or is employed in an enterprise engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Generally, employers must pay their employees at least one and one-half times their regular pay rate for any time they work in excess of forty hours per week in order to comply with §7. *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010). The FLSA provides several exemptions from § 7's requirements, such as the "retail commission exception," *Parker*, 620 F.3d at 277 (explaining that exemption under 29 U.S.C. § 207(i) applies to employees of retail or service establishments), and the "administrative exception." *Swartz v. Windstream Commc'ns,*

*Inc.*, 429 Fed. Appx. 102, 104 (3d Cir. 2011) (excepting those employed in a bona fide executive, administrative, or professional capacity pursuant to 29 U.S.C. § 213(a)(1)). Otherwise, § 7 prohibits employers from working their employees for workweeks longer than forty hours without paying them time and one-half for the excess hours worked. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 183 (3d Cir.1988).

Section 11(c) of the FLSA requires employers to "make, keep, and preserve" accurate employment records. 29 U.S.C. § 211(c); *see Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) (explaining that § 11(c) "requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked"), abrogated on other grounds, *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The employment records must include, among other information, employees' hours worked per day, hours worked per week, total daily or weekly straight time, and overtime premiums due. 29 C.F.R. §§ 516.2(a)(7)-(9). The employer bears the burden of maintaining these records. *Tri–County Growers*, 747 F.2d at 128 (making clear that § 11(c) "requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked"). Employers may not estimate employees' hours worked, *id.,* or manipulate the records to reduce the number of hours worked. *See Donovan v. White Beauty View, Inc.*, 556 F. Supp. 414, 416–17 (M.D. Pa.1982) (holding that employer violated FLSA by falsifying records in order to reduce employees' hours worked).

### B.  Chamberlain Factors

The Secretary produced substantial evidence to support his position that Defendants violated Section 7's and Section 11(c)'s requirements. It is clear on the face of LKHS's timekeeping records, and supported by employee statements and the admissions of the employer,

that Defendants paid their caregivers straight-time for any and all overtime hours that caregivers worked during the period of November 20, 2016 to October 28, 2020 (hereinafter the "relevant time period"). (ECF No. 1 ¶¶ 6-8, Shuey Decl. ¶¶ 5-12). During the WHD's investigation of Defendants, Taylor admitted to his knowledge of the FLSA's overtime requirements. (ECF No. 1 ¶ 8). Defendants converted their home health caregivers from independent contractors to employees in 2016 following an investigation by the Pennsylvania Department of Public Welfare, but continued to pay them straight time for overtime. (ECF No. 1 ¶ 8). Even though Defendants began paying certain employees an overtime premium in 2017, they continued to pay others straight time for overtime. (ECF No. 1 ¶ 8). Defendants also failed to keep and preserve complete and accurate records for employees for at least three years. (ECF No. 1 ¶ 9, 29 C.F.R. §§ 516.2, 516.5, 516.6). Defendants did not provide payroll records or any other record of any amounts paid to any of their employees for any hours worked. (Shuey Decl. ¶ 10). In addition, Defendants did not provide timekeeping or other records for the period of November 20, 2016 through September 30, 2017. (Shuey Decl. ¶ 10). Because of Defendants' practice of paying employees their straight time hourly rates for all hours worked, Defendants also failed to keep accurate records of employees' weekly overtime premium pay due. (ECF No. 1 ¶ 9).

Under *Chamberlain*, 210 F.3d at 164, three factors control whether a default judgment should be granted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Should default judgment not be entered, Plaintiff would be prejudiced because he could not proceed with the action due to Defendants' failure to respond. Defendants' employees would be denied the wages earned but not paid and owed them. As to the second and third factors, Defendants have not responded to the complaint, and have failed to appear, despite proper service.

Plaintiff has shown that Defendants were served with all of the required documents. Despite this fact, Defendants have neither engaged in the litigation process nor offered any reason for their his failure to appear. Therefore, the Court finds that Defendants are culpable for their failure to appear and that there is no basis to excuse this conduct. Accordingly, the *Chamberlain* factors have been met and support the entry of default judgment.

### C. Damages

The Secretary seeks a declaration that Defendants owe back wages as well as liquidated damages.

#### 2. Back Wages and Willfulness

Because the court has determined that the Secretary has shown sufficient evidence to support his claims that defendants violated §§ 7, and 11(c), the analysis now turns to whether these violations were "willful" within the meaning of the FLSA. A willful violation involves an employer's knowledge or "reckless disregard" of, *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677, or indifference to the FLSA's requirements. *Thurston,* 469 U.S. at 117, 105 S.Ct. 613; *Selker Bros.,* 949 F.2d at 1296. If a violation of the FLSA is willful, employees may recover for a third year of damages. *See McLaughlin*, 486 U.S. at 132, 108 S.Ct. 1677.

The *Thurston* standard has been satisfied where an employer had reason to suspect that his conduct violated the FLSA but did not make a good faith effort to confirm this information and comply. *Selker Bros*., 949 F.2d at 1296 (holding that gas station operator willfully violated the FLSA where he suspected that paying gas station operators a percentage of gas sold in lieu of minimum wage might be illegal but continued to do so in order to keep his overhead costs down). Courts have also found the requisite knowledge or indifference where the employer has a history of past FLSA violations. *See, e.g., Herman v. Palo Group Foster Home, Inc*., 183 F.3d 468, 474

(6th Cir.1999) (affirming the district court's finding of willfulness on a record indicating that defendant "had been investigated for violations twice in the past, paid unpaid overtime wages, received explanations of what was required to comply with the Act, and assured the DOL that he would comply in the future").

Here, as in *Selker Brothers*, the record supplies ample evidence that, at the very least, defendant had reason to suspect that his conduct ran afoul of the FLSA. He admitted he knew of FLSA's overtime requirements and converted their home health caregivers from independent contractors to employees in 2016 following an investigation by the Pennsylvania Department of Public Welfare, but continued to pay them straight time for overtime. Based on employee statements and the admissions of Taylor and Defendants' accountant Hancock, Defendants paid the employees only their regular rate for all hours worked, including those hours in excess of forty in a workweek. Shuey Decl. ¶ 10. Some employees interviewed by Mr. Shuey stated they told Defendant Taylor they should be paid overtime, yet Defendants did not pay them as required. The Defendants repeatedly violated sections 7 and 11(c) of the Act from November 20, 2016 through at least October 28, 2020. In addition, records were completely missing from the period of November 20, 2016 through September 30, 2017. This lends further support to the Secretary's argument that the violations in the present action were willful. Accordingly, the three-year period over which the Secretary seeks back wages is permissible.

After hearing Mr. Schuey's testimonial explanation as to his methodology,[3] *see also* ECF No. 21-3, and upon review of the exhibits in support thereof, the Court finds Mr. Shuey's

---

[3] For example, the timekeeping records of hours worked per employee per week for the time period of October 1, 2017 through October 28, 2020 were used to compute back wages due for this time period. Shuey Decl. ¶ 11. Records were completely missing from the period of November 20, 2016 through September 30, 2017. Back wages were computed based on inferences and averages drawn from the records provided to the Department that were closest in time to this period. Shuey Decl. ¶ 12

10

computations support that as a result of Defendants' failure to pay the overtime premium for hours worked over forty per workweek, Defendants owe ninety-two employees overtime back wages totaling $654,995.95 for the period of November 20, 2016 through October 28, 2020.

    2. Liquidated Damages

The FLSA also contains provisions allowing the Secretary to recover liquidated damages in an amount equal to that of unpaid wages where an employer has violated § 7. *See* 29 U.S.C. § 216(c) (§ 16(c)"). Liquidated damages are intended to compensate employees who have been deprived of the minimum wages to which they are entitled by law for any additional losses they may have suffered as a consequence of this deprivation. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982). In this way, liquidated damages are compensatory, rather than punitive, in nature. *Brooklyn Sav.,* 324 U.S. at 707, 65 S.Ct. 895. Courts have recognized that liquidated damages are commonly awarded. *See, e.g., Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986) (explaining that "[d]oubling is not some disfavored 'penalty.' ... Double damages are the norm, single damages the exception"). The FLSA provides for a "strong presumption in favor of doubling, a presumption overcome only by the employer's 'good faith ... and reasonable grounds for believing that [the] act or omission was not a violation.'" *Id.* (alteration in original) (quoting 29 U.S.C. § 260 (2006)). Accordingly, this court may deny the Secretary's claim for liquidated damages only if an employer can show good faith and reasonable grounds for failing to comply with the FLSA. *See Tri–County Growers, Inc.,* 747 F.2d at 127. The "plain and substantial" burden to make this showing rests upon the employer. *Id.* at 129 (emphasis omitted) (quoting *Rothman v. Publicker Indus.,* 201 F.2d 618, 620 (3d Cir.1953) (interpreting provision to mean that employer must "persuad[e] the court by proof that his failure to obey the

statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict")).

Here, defendant cannot meet his "plain and substantial" burden. *Rothman,* 201 F.2d at 620. As explained above, the court finds as a matter of law that defendant's pay practices violated the Act. This finding creates a strong presumption in favor of awarding liquidated damages, and defendant has failed to appear and participate in the litigation and knew their conduct was prohibited by the Act. In the absence of evidence to support a finding of good faith and reasonable grounds necessary to overcome this presumption, the Secretary's motion seeking $654,995.95 in liquidated damages, an amount equal to the award of back wages, will be granted.

### D. Injunctive relief

The FLSA authorizes district courts to issue injunctive relief "restrain[ing] violations" of §§ 7 and 11(c) upon a showing of cause. 29 U.S.C. § 217. Whether to grant an injunction is within the court's sound discretion. *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 288 (D. N.J. 1989) (citing *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 215, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959)). Some courts have recognized that FLSA violations should be enjoined when the court is not fully convinced that a recurrence of the violation is not probable. *See, e.g., Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir.1980) (recommending "injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations"); *see also Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir.1958) (recognizing "broad discretion of the district court to grant or deny injunctive relief"). Factors that district courts consider in deciding whether to issue an injunction include the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future. *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654,

657 (6th Cir.1994).

Despite a previous investigation, Defendants engaged in a continued pattern of behavior violative of FLSA.  Such a troubling track record warrants injunctive relief. *See Herman v. Hector I. Nieves Transp., Inc.*, 91 F.Supp.2d 435, 450 (D. P.R. 2000) *aff'd,* 244 F.3d 32 (1st Cir.2001) (granting injunction "[i]n light of the long and offensive history of non-compliance, [d]efendants' full knowledge of the Act's requirements, continuing violations of the overtime compensation, minimum wage, and record-keeping provisions of the Act, and the absence of any proposed plan by [d]efendants for remedying the situation"). Since the Secretary's investigation, Defendants have admitted that they are not in compliance with the Act, and they have failed to produce any documents showing that they have come into compliance. In fact, Defendants' continued failure to comply with the requirements of the FLSA suggests that they will remain out of compliance and continue paying regular rates for overtime hours.   Their failure to respond to this lawsuit is also suggestive of a lack of intent to comply with the FLSA.

Accordingly, injunctive relief is necessary to prevent continued and future violations of the FLSA.

### III. Conclusion

For these reasons, the Motion for Default Judgment will be entered.    An appropriate Judgement will be entered.

DATED:  February 16, 2021

/s/ *Robert J. Colville*
Robert J. Colville
United States District Court Judge